**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**LAKE COUNTRY POWER, INC., sued as Lake Country Power in its capacity as a named fiduciary of the Lake Country Power Defined Benefit Pension Floor Plan; LAKE COUNTRY POWER DEFINED BENEFIT PENSION FLOOR PLAN ("the LCP Plan"); BECKY SEELY, in her capacity as Human Resources Coordinator of Lake Country Power and named fiduciary of the Retirement and Security Program for Employees of National Rural Electric Cooperative Association and its member systems; RICHARD WALLIN; DARLA NUBSON; and SHERMAN LIIMATAINEN,**

Plaintiffs,

v.

**RETIREMENT AND SECURITY PROGRAM FOR EMPLOYEES OF NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION, and its Member Systems ("the R & S Program"); DOUGLAS W. JOHNSON, HARRY H. BONNER, OVERT CARROLL, JIMMY L. DEAN, MILO C. GILBERTSON, PERRY E. RUBART, and ELMER G. SAMS, in their capacities as Members of the NRECA Insurance and Financial Services Committee and named fiduciaries of the R & S Program; DAVID METZ, in his capacity as the Director of Retirement, Safety, and Insurance Department of NRECA and named fiduciary of R & S Program; and JOHN WADE, in his capacity as Chief Actuary of the R & S Program,**

Defendants.

Civil No. 01-1953 (JEL/JGL)

**O R D E R**

FILED NOV 2 0 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

APPEARANCES

Steven Wilson, Esq., on behalf of Plaintiffs

Michael Docherty, Esq., on behalf of Defendants

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on November 12, 2002 on Defendants' Motion to Compel Production of Documents from Winona National & Savings Bank, Employee Benefits Group, and Sletto and Associates (Doc. No. 21); Defendants' Motion to Compel Production of Documents from Lake Country Power (Doc. No. 24); and Plaintiffs' Cross Motion to Compel Production and Other Relief (Doc. No. 29). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

This case arises out of Plaintiffs' decision to withdraw their union employees' assets from a pension fund administered by Defendants ("the R & S Program"). Plaintiffs assert that Defendants failed to remit approximately $2 million that should have been segregated and allocated to Plaintiffs' union employees at the time of the withdrawal. Plaintiffs brought the instant lawsuit seeking recovery of the monies. Specifically, Plaintiffs aver that they detrimentally relied on Defendants' representations regarding the actuarial rate that would be used to determine the value of funds remitted to Plaintiffs.

Defendants respond that Plaintiffs did not detrimentally rely on Defendants' representations. Rather, Defendants aver that Plaintiffs' decision to withdraw their funds was based on the representations of Mr. Mark Sletto, one of Plaintiffs' attorneys. The Parties filed the instant motions to address a number of discovery disputes.

## II. Defendants' Motion to Compel Production of Documents from Plaintiff Lake Country Power

Defendants' Document Request No. 5 seeks "[a]ll documents and communications from and to Mr. Mark Sletto, Sletto and Associates, Employee Benefit Group and any of their affiliates concerning the matters alleged in the complaint." (Urda Aff. Ex. A at 7.) Defendants argue that Plaintiffs waived their attorney-client privilege regarding communications with Mr. Sletto when they claimed detrimental reliance on Defendants' representations. According to Defendants, Plaintiffs put their state of mind concerning withdrawal from Defendants' pension plan at issue when they filed that claim. (Urda Aff. Ex. C. at 1.) Defendants further assert that Plaintiffs put the role of Mr. Sletto at issue when they filed estoppel charges against Defendants and then asserted the attorney-client privilege as to Mr. Sletto's advice.[1] (Id. at 2.) Defendants argue that they cannot properly defend against Plaintiffs' claims without examining the documents at issue.

---

[1]Count II of Plaintiffs' Complaint states that "Defendants should be estopped from asserting an alleged interpretation of the R & S Program Document which is inconsistent with their past course of dealing and representations." (Complaint ¶ 48.)

Plaintiffs respond that they have not waived privilege regarding their communications with Mr. Sletto. In fact, Plaintiffs argue that Defendants have placed the advice of Defendants' own legal counsel at issue by changing their interpretation of the actuarial rate applied to Plaintiffs' withdrawn funds. Plaintiffs further assert that if Defendants are allowed to discover their communications with Mr. Sletto, fairness requires that Plaintiffs be allowed to discover Defendants' communications with their attorneys regarding the interpretation of the R & S Program.

Both Parties claim that Sedco Int'l v. Cory, 683 F.2d 1201 (8th Cir. 1982) and Medtronic, Inc. v. Intermedics, Inc., 162 F.R.D. 133 (D. Minn. 1995) support their positions. The Court finds that these two cases provide the proper starting point for its analysis of the issues raised by Defendants' motion.

**A. The Case Law**

A client may waive attorney-client privilege either expressly or by implication. See Sedco, 683 F.2d at 1206 (citing United States v. Cote, 456 F.2d 142, 144 (8th Cir. 1972)). In the instant case, Defendants argue that Plaintiffs waived the privilege by implication.

In Sedco, Plaintiff Carver sued an oil drilling company for fraudulent misrepresentation claiming that the he relied on the company's representations regarding the profitability of investing in an offshore oil drilling

venture. See id. at 1203.[2] Carver won in district court. On appeal, Defendant Sedco argued that application of the attorney-client privilege was inappropriate in that case because it prevented defendants from discovering whether the Carver actually relied on their representations. See id. at 1204. Sedco asserted that by claiming fraud, Carver waived attorney-client privilege as it related to his state of mind at the time he decided to enter into the oil drilling venture. See id. At trial, Carver testified that he did not receive any information from his attorneys other than the factual information and business advice he disclosed in his pretrial affidavit. See id. at 1205.

The court stated that it must examine two elements when deciding whether an implied waiver of the attorney-client privilege exists: (1) implied intention, and (2) fairness and consistency. See id. The court explained that "[a] waiver is to be predicated . . . when the conduct . . . places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." Id. at 1206 (quotation omitted) (brackets and ellipses in original).

The Sedco court held that by asserting fraud, Carver "at most, waived his right to assert the privilege to prevent disclosure of communications which might have proven he did not rely on Sedco's employees' statements or that such reliance was unreasonable." Id. The court went on to reason that

[2]The original plaintiff died after the case was submitted for decision, and the executors of his estate were substituted as parties. See Sedco, 683 F.2d at 1203 n.1.

reliance exists if "substantial weight was given to a representation," and that the Carver's attorney-client communications were relevant only insofar as they might demonstrate that Carver acted as he did for reasons totally unrelated to the Sedco's representations. See id. The court found that Carver had provided sufficient evidence that he acted in reliance on Sedco's statements. See id. In fact, up until the time Carver entered into the oil drilling venture, all technical information came solely from Sedco. See id. The fact that Carver received advice regarding the legal aspects of the venture was of no consequence. See id. In examining whether Carver's alleged reliance on legal advice could be relevant to the case, the court stated:

> Sedco does not suggest and we cannot perceive how receipt of ordinary legal advice could have made reliance unreasonable. Only evidence that Carver received new factual information or technically expert analysis of known facts might have revealed that reliance was unreasonable. . . . It is difficult to perceive that counsel's own opinions on strictly commercial subjects, if any were expressed to Carver, could have make Carver's reliance on Sedco unreasonable.

Id. at 1207. Thus, the Eighth Circuit held that Sedco had not met its burden to demonstrate that the trial court's refusal to allow discovery of Carver's attorney-client communications was an abuse of discretion. See id.

Medtronic involved the interpretation of a settlement agreement. See Medtronic, 162 F.R.D. at 134. Both parties agreed that only attorneys had knowledge regarding the intended meaning of the agreement. See id. at 135. In that case, Plaintiff Medtronic argued that Defendant Intermedics had put its interpretation and understanding of the agreement at issue in its pleadings.

See id. To a certain extent, the court agreed. The court held that as long as Intermedics' interpretation of the settlement agreement was based solely on the four corners of the document, no implied waiver of attorney-client privilege had occurred. See id. However, the court cautioned that as soon as Intermedics offered extrinsic evidence to bolster its interpretation of the agreement, it would waive the privilege attached to its interpretation of the document. See id. The Medtronic court cited three factors to examine when deciding if an implied waiver of the attorney-client privilege has occurred: (1) whether assertion of the privilege is the result of an affirmative act; (2) whether through the affirmative act, the party has placed the protected information at issue by making it relevant; and (3) whether application of privilege would deny the opposing party access to information vital to its defense. See id. at 134.

**B. Plaintiffs Have Waived Attorney-Client Privilege**

The Court finds that Plaintiffs have waived attorney-client privilege regarding their reasons for withdrawing from the R & S Program. Applying the Medtronic factors to this case, the Court finds that: (1) Plaintiffs' assertion of privilege is the result of their affirmative act of claiming detrimental reliance; (2) Plaintiffs' claim of detrimental reliance has made the protected information relevant because whether Plaintiffs' decision was based, at least in part, on other information and factors is critical to Defendants' case which hinges on the contention that Plaintiff acted in reliance on the advice of Mr. Sletto and his associates; and (3) Denying access to this information would deny Defendants

information vital to their defense. See id. In order to prove detrimental reliance, Plaintiffs must demonstrate that they "took action, resulting in some detriment, that they would not have taken had they known [the actuarial rate Defendants intended to use when calculating the value of remitted funds]." Monson v. Century Mfg. Co., 739 F.2d 1293, 1302 (8th Cir. 1984). It would be unfair to allow Plaintiffs to assert detrimental reliance without allowing Defendants the opportunity to examine whether there were other factors which may have induced Plaintiffs to act as they did. See Sedco, 683 F.2d at 1206.

The Court finds persuasive Defendants' argument that it is likely that Plaintiffs withdrew their funds, at least in part, based on factors independent of Defendants' representations. Specifically, Defendants assert that around the time Plaintiffs' decided to withdraw their funds from the R & S Program, Mr. Sletto was "touting the many benefits of withdrawal and asserting an actuarial rate that he claimed plan administrators would use to calculate the withdrawal amounts." (Def. Mem. Supp. Mot. Compel at 2) (emphasis in original). Defendants also assert that Plaintiffs conducted an independent analysis regarding the withdrawal that included consultation with Mr. Sletto and the various non-attorney business entities with which he is affiliated. (Id. at 3.) These facts, argue Defendants, make it likely that Plaintiffs also relied on Mr. Sletto's independent evaluations and recommendations when making their decision to withdraw.

The Court agrees. However, Defendants are cautioned that the wavier is a very narrow one. The narrow set of communications to which attorney-client privilege is waived includes communications which would reflect Plaintiffs' reliance on sources other than Defendants' representations including, but not limited to: (1) communications which involve any new factual information or expert analysis of known facts, including Mr. Sletto's independent assessments of the actuarial rate which would likely be applied to Plaintiffs' fund withdrawal; and (2) any communications which might reveal that Plaintiffs' reliance on Defendants' representations was unreasonable. See Sedco, 683 F.2d at 1207. This information is necessary for Defendants to rebut Plaintiffs' argument that it relied on Defendants' information when making its decision to withdraw. It is also necessary to determine the reasonableness of Plaintiffs' reliance on Defendants' representations.

The Court is not sure what type of work is done by Sletto and Associates. Defendants hint that the company is involved in non-legal business consulting, as well as legal work. (Def. Mem. Supp. Mot. Compel at 3.) To the extent that this is true, purely business communications are, of course, not protected by the attorney-client privilege. See id. at 1205.

Therefore, Defendants' motion is granted as to communications which would reflect Plaintiffs' reliance on sources other than Defendants' representations including, but not limited to: (1) communications which involve any new factual information or expert analysis of known facts, including Mr.

Sletto's independent assessments of the actuarial rate which would likely be applied to Plaintiffs' fund withdrawal; and (2) any communications which might reveal that Plaintiffs' reliance on Defendants' representations was unreasonable.

## III. Defendants' Motion to Compel Production of Documents from Winona National & Savings Bank, Employee Benefits Group, and Sletto and Associates

At the motion hearing, the Parties represented that there are no remaining issues with respect to this motion. Therefore, the motion is denied as moot.

## IV. Plaintiffs' Cross Motion to Compel Production and Other Relief

Plaintiffs' motion originally addressed four issues. First, Plaintiffs requested an Order requiring Defendants to forward paper copies of any correspondence that Defendants send by facsimile transmission. Defendants agreed to this request. Therefore, this part of Plaintiffs' motion is denied as moot.

Plaintiffs also requested an Order requiring Defendants to state that service of process was effected on Defendant Jimmy L. Dean by the promise that Defendants' counsel would accept service on behalf of all individual Defendants. Defendants agreed to this request. Therefore, this part of Plaintiffs' motion is also denied as moot.

**A. Whether Defendants Waived Attorney-Client Privilege When They Asserted Their Interpretation of the Policy Provisions**

Plaintiffs argue that "if Defendants are relying on advice of legal counsel to defend their actions, then all communications with their attorneys ought to be the subject of discovery." (Pl. Mem. Supp. Cross Mot. Compel at 12.) At the motion hearing, Plaintiffs' Counsel argued that under Medtronic Plaintiffs are entitled to discover attorney-client communications relating to Defendants' interpretation of the R & S Program. Specifically, Plaintiffs argue that if Defendants intend to introduce extrinsic evidence regarding their alleged policy change, Plaintiffs are entitled to examine any attorney-client communications related to the issue. Plaintiffs also aver that fairness requires that if they must produce attorney-client communications, Defendants must do the same.

The Court finds Plaintiffs' argument misplaced. The Court does not currently have any evidence before it which supports Plaintiffs' contention that Defendants intend to introduce extrinsic evidence to support their interpretation of the R & S Program. In fact, John Wade's letter to Mr. Sletto bases Defendants' interpretation of the accrual rates solely on provisions of the R & S document. (Wilson Aff. Ex. H.) John Wade is Defendant NRECA's Executive Director of Pension Products and Chief Actuary. (Id. at 2.) In a November 5, 1999 letter Alan Vandendriessche, Assistant Manager of the compliance division of the NRECA, also stated that the value of assets

transferred to Plaintiffs would be based on Section 16.04 of the R & S Program. (Wilson Aff. Ex. D.) There is no evidence of reliance on extrinsic evidence.

The Court further finds that fairness does not require that Defendants produce their attorney-client communications in this situation. At this point in time, the Court is not convinced that Defendants have put either their state of mind or their attorney-client communications at issue. Therefore, this part of Plaintiffs' motion is denied.

### B. Whether Defendants Must Provide Individual Signature Pages with Interrogatory Answers

Plaintiff's interrogatory answers were signed by Defendants' in-house counsel on behalf of all Defendants. Plaintiffs request that each individual Defendant sign the interrogatory answers themselves. At the motion hearing, Defendants' Counsel stated that having the individual Defendants prepare signature pages will not result in any prejudice. In fact, Defendants' Counsel stated that this is "not a significant issue." Therefore, this part of Plaintiffs' motion is granted. Individual Defendants must provide signature pages for all previously submitted interrogatory answers within thirty days of this Order, and contemporaneously with any future interrogatory answers.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Defendants' Motion to Compel Production of Documents from Winona National & Savings Bank, Employee Benefits Group, and Sletto and Associates (Doc. No. 21) is **DENIED AS MOOT**;

(2) Defendants' Motion to Compel Production of Documents from Lake Country Power (Doc. No. 24) is **GRANTED** as set forth fully in the body of this Order;

(3) Plaintiffs' Cross Motion to Compel Production and Other Relief (Doc. No. 29)is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART** as set forth fully in the body of this Order; and

(4) Parties must respond to any outstanding discovery requests by December 20, 2002.

Dated: November 20, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge